LINCOLN HULLEY, *Plaintiff in Error*, v. HELEN HUNT, *Defendant in Error*.

1. For the President of a co-educational college to say of a girl, student, who has been suspended but not expelled, that "she got to running out at night with the boys; she was out one

night in particular until half past seven or eight o'clock and did not come to her supper at all, and on various occasions she was doing the same thing and came in late to her supper" is not a charge of fornication.

2. It is not slanderous, as charging fornication, for a President of a college to say of a suspended student that 'she would be ruined for life' if he told all he knew of her.

3. When the spoken words could not properly leave on the hearer's mind the impression charged in the inuendo, there is no issue for the jury.

Writ of error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the court.

*Geo. M. Robbins, Stewart & Bly* and *Blount & Blount & Carter,* for Plaintiff in Error;

*Alex St. Clair-Abrams,* and *Landis & Fish,* for Defendant in Error.

COCKRELL, J.—Helen Hunt recovered judgment against Lincoln Hulley in an action for slander in the sum of fifteen thousand dollars. At the trial the declaration consisted of four counts, being of statements alleged to have been made to A. G. Hamlin, Silas B. Wright, Carney L. Wilder and H. L. Clayberg. The counts as to Wright and Wilder went out upon the denial by them of the alleged statements, and we have left only the counts as to Hamlin and Clayberg.

Clayberg's evidence was discredited, not only by inherent improbability, but impeached in every possible way, and we are forced to the conclusion that the verdict

was found solely upon the alleged statement of Mr. Hamlin, and we shall confine ourselves to that count.

In that count as originally filed, it is alleged that Miss Hunt, a student of the John B. Stetson University of which Dr. Hulley was president, was without cause by him expelled therefrom and following such expulsion Dr. Hulley said to Mr. Hamlin "There were serious reasons for my actions." "I do not wish to discuss this question, the reasons are serious," and further when told that Miss Hunt might bring legal proceedings in the matter "she had better not or I will have to show up her character," the inuendoes being that "she was and had been guilty of immoral and improper conduct." In the amended count the language is changed and reads: "I have done all I can for Helen (meaning the plaintiff) and I am thinking that at some future time she may be permitted to return here, if this thing is allowed to die out. I have written to them to that effect; but, if they sue, it will be the mistake of their lives, I have kept still about Helen in her and their interests; I will not show her up unless they make me; if they want this matter kept quiet so it will die out, they must help me do it, it will be a sorry day for Helen Hunt ————— the worst thing they can do for her ————— if they should ever attempt to force me to give my reasons for sending her away as I did. You can depend upon it they had better let this matter drop. And saying further 'I have sent her away for sufficient reasons ————— something serious you may be sure. If you knew them, you or any other fair-minded man or set of men, would agree with me,' meaning thereby that the plaintiff, Helen Hunt, was and had been guilty of improper and immoral conduct.

And saying further, 'They (meaning plaintiff's parents) know she is not all right because she had trouble in a St. Augustine school, right under their eyes.'" The count was further amended by adding an inuendo that the statements involved the young lady's chastity.

After various pleadings the sole issue raised by the plea of not guilty was before the jury.

At the trial upon the testimony of Mr. Hamlin the count was again amended by enlargement so as to include these statements: "I have said this before, and I will say it now, that Helen got to running out at night with the boys; she was out one night in particular until half past seven or eight o'clock and did not come home to her supper at all, and on various other occasions she was doing the same thing and came in late to her supper." "There are other things in connection just of that sort which, if I should tell you, you would not believe, I do not think you would believe them unless I would corroborate them. You would be just perfectly appalled if you knew of the facts. I owe something to other students and their parents as well as Helen Hunt. She was not a proper person to be connected with this school, and she had to go. Her example was a very bad one, and her influence was bad." "You tell the Hunts that I done all I can for Helen now. I have it in my mind that if this thing is allowed to die out that she may be permitted to return here sometime in the future. I have so written them, but it is all with them. They will make the mistake of their lives if they ever bring a suit. I am taking this step, Mr. Hamlin, in their interest and I am trying to conceal the facts; I do not wish them to be made public, and it will be a sorry day for Helen Hunt if she ever forces me to tell what I know. She can de-

pend upon it that unless she wants to be ruined for life they had all better keep this matter quiet." To all of these statements were added the inuendo that they charged fornication.

A most careful and thoughtful reading of these alleged statements convinces us that whether taken singly or all together they are not susceptable to the inuendo of fornication imputed to them by the pleader. There is nothing in them either with or without the colloquim that bears upon the sex relation, except the being out late at night with the boys and this so immediately qualified by the showing of the early hour at which she returned, and by the further showing that the speaker as President of the Institution expected to reinstate her in the school, that the remark clearly applies to an infraction of the rules or the proprieties of this co-educational boarding school, and may not be contorted into an imputation of unchastity. The remark was made, if made, to one who looked upon the institution as his child, who drew its original charter and was for many years officially connected with it, and who also in a way was interested in the welfare of the young lady; a peacemaker as it were.

We cannot see how the language could properly have left on his mind the impression that the young lady was charged with fornication, and Dr. Hulley repudiates not only the use of the quoted language, but affirms that there never entered his mind a thought of sexual impurity, and that to his knowledge there was no possible basis for the thought, much less the statement.

As Miss Hunt has not been charged with so flagrant a dereliction, except in the Clayberg count, which we ignore, and upon this record stands spotless not only as

to the fact, but also as to the imputation, the judgment must be reversed.

WHITFIELD, C. J., AND TAYLOR, SHACKLEFORD AND HOCKER, J. J., concur.